HOLDEN & MARTIN *v.* JOHN GILFEATHER.

January Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, HASELTON, POWERS, and MILES, JJ.

Opinion filed February 16, 1906.

*Trover—Mortgages—Lien Notes—Contracts—Consideration —Mutual Promises—Repudiation—Statute of Frauds— Mutual Waiver of Conflicting Claims.*

While plaintiffs had a valid recorded mortgage of a horse, the mortgagor traded it to defendant, who was ignorant of the incumbrance, for a yoke of oxen upon which he gave defendant a lien note that was never recorded. Thereafter the mortgagor executed to plaintiffs, who knew nothing of the lien note, a mortgage of the oxen to secure their original mortgage debt. Later, after one of the oxen had died, and soon after the last mortgage was recorded, and while plaintiffs were in possession of the other ox under their mortgage, plaintiffs and defendant verbally agreed that plaintiffs would waive their claim to the horse and should have the ox. Subsequently, defendant took the ox from plaintiffs' possession and sold it on his

lien note. *Held,* that defendant is liable in trover for the value of the ox.

Said agreement of mutual waiver was neither executory, nor a sale or exchange of property, but was merely a reciprocal waiver of conflicting claims, whereby the waivers were made effective as soon as agreed upon. Hence, though the ox was worth $40, the agreement was not within the Statute of Frauds.

Said agreement was a valid contract, the mutual promises of the parties being a sufficient consideration.

The taking of the ox by defendant from plaintiffs' possession, coupled with the subsequent sale thereof on his lien note, could not constitute a "repudiation" of said agreement, for there cannot be a repudiation of an executed contract.

Though said agreement is essential to plaintiffs' right to maintain trover for the ox, the suit is not based thereon, but on the title obtained from the mortgagor, perfected by defendant's waiver of his lien.

TROVER for an ox. Plea, the general issue. Trial by court at the September Term, 1904, Windham County, *Start,* J., presiding. Judgment for plaintiffs for $40, which the court found to be the value of the ox at the time of its conversion, and costs. The defendant excepted. The opinion states the substance of the facts found by the court.

*Clarke C. Fitts* for the defendant.

A mortgage to secure an antecedent debt does not put the mortgagee in the position of a purchaser for value so as to entitle him to prevail over the rights of a defrauded vendor. *Matthews* v. *Kennedy,* 113 Ga. 378; *Vincent* v. *Hansen,* 113 Mich. 173; *Curme* v. *Rauh,* 100 Ind. 247; *Wine Co.* v. *Rhinehart,* 42 Mo. App. 171.

A mortgagee of a conditional vendee is not a *bona fide* purchaser. 46 Neb. 830; 2 Pom. Eq. Jr. § 749; *Bank* v. *Bates,* 120 U. S. 556.

Since the ox was found to be worth $40, the verbal agreement that the plaintiffs would waive their claim to the horse and should have the ox, was within the Statute of Frauds, and inadmissible. *Strong, Whitney & Co.* v. *Dodds,* 47 Vt. 348; *Bank* v. *Grupe,* 36 Hun. 481.

This oral agreement was an executory contract, and cannot be the basis of an action of trover. *Deeley* v. *Dwight,* 132 N. Y. 59; *Tuthill* v. *Wheeler,* 6 Barb. 362; *Whitcomb* v. *Hungerford,* 42 Barb. 177.

*Waterman, Martin & Gibson* for the plaintiffs.

Defendant is estopped from asserting his claim under his lien note, because of his failure to tell plaintiffs thereof when he asked them to shift their mortgage from the horse to the oxen. *Holman* v. *Boyce,* 65 Vt. 318; *Locklin* v. *Davis,* 71 Vt. 321; *Lindsay* v. *Cooper,* 94 Ala. 170; *Katz* v. *Bedford,* 77 Cal. 319, 8 L. R. A. 735, 736.

MUNSON, J.   Plaintiffs held a valid recorded mortgage of a horse, executed by one Phelps.   Phelps traded this horse to defendant for a yoke of oxen, without the knowledge of plaintiffs, and without informing defendant of the incumbrance. Defendant reserved a lien on the oxen to secure boot money, but failed to record the lien.   A few weeks later, plaintiff Holden told defendant of the mortgage, and defendant wanted plaintiffs to release it.   Holden said he would see the oxen, and if it was a fair trade plaintiffs would take a mortgage on the oxen and release the horse.   Soon after this, Phelps gave plaintiffs a mortgage of the oxen, conditioned for the payment of the note described in the mortgage on the horse.   Five days later, this mortgage was placed on record.   After the above interview, at a time not definitely found, one of the oxen died.

Plaintiffs took possession of the remaining ox under their mortgage soon after it was recorded, and a week later defendant took the ox from plaintiffs' possession, and it was sold on the lien before suit was brought. Plaintiffs had no knowledge of defendant's lien until after they had taken possession of the ox. Plaintiffs and defendant had an interview after defendant took the ox and before it was sold, in which it was agreed that plaintiffs would waive their claim to the horse, and should have the ox. In the words of the finding, "defendant repudiated this agreement."

The agreement just stated was found from testimony taken subject to defendant's exception. The evidence is now claimed to have been inadmissible because of the Statute of Frauds. We think the agreement was not a sale of goods within the meaning of the statute. The mutual undertakings were merely waivers of the claims of the respective parties arising out of previous transactions. *Clark* v. *Duffey,* 24 Ind. 271; *Mygatt* v. *Tarbell,* 78 Wis. 351; *Pleasants* v. *Blodgett,* 39 Neb. 741. The defendant's waiver of his claim of a lien on the ox left to the plaintiffs an undisputed right under their mortgage from Phelps. The plaintiffs' waiver of their claim to the horse left the defendant's title to it from Phelps unincumbered. So the finding is based upon evidence properly received, and the agreement is in the case.

The case cannot be disposed of on the ground that the taking of the last mortgage discharged the first. There is no finding that defendant was ever notified that plaintiffs had concluded to make the exchange of securities, and no finding that the mortage of the oxen was in fact taken in pursuance of the talk had in regard to it. The taking of that mortgage was consistent with its being taken to replace the mortgage on the horse, and equally consistent with its being taken to hold

as additional security. We cannot say that its procurement operated as a release of the horse, for the plaintiffs afterwards treated their mortgage upon the horse as a subsisting claim. They were to have the ox and waive their claim to the horse.

The understanding arrived at in the final interview was a valid agreement. The mutual promises of the parties afforded a sufficient consideration. If the taking of the mortgage on the ox was not to be treated as a shifting of security, the plaintiffs' right to the horse was undeniable. The claims arising out of the defendant's failure to record his lien on the ox and the fact that plaintiffs' mortgage of the ox was taken to secure a pre-existing debt, were claims that could be honestly made. See *Wilder* v. *St. Johnsbury & Lake Champlain R. R. Co.,* 65 Vt. 43, 25 Atl. 896. It is to be presumed that the respective positions of the parties were taken in good faith, in the absence of any finding to the contrary. There is no suggestion of any ground upon which the validity of the compromise agreement could be questioned.

The agreement continued in force notwithstanding the attempted repudiation. A repudiation of a contract is something said or done by a contracting party to indicate that he will not perform, or further perform, his contract. It is an essential element of a repudiation that there be something still to be performed by the repudiating party in the future. Wald's Pollock on Contracts, 3d ed. 333. This agreement was not executory. It was nothing but a reciprocal waiver of conflicting claims, and the waivers were effective as soon as agreed upon. It was not an agreement on the part of the plaintiffs that they would discharge their mortgage of the horse on the record, nor an agreement on the part of the defendant that he would bring back the ox and deliver it on the plaintiffs' premises. It was an understanding arrived at to determine the

rights of the parties, and left the results to follow as they might from the rights so determined. The agreement would have barred a further assertion of the plaintiffs' claim to the horse, although not discharged of record. The plaintiffs' right to the ox from the time of the agreement was the same as if it had been in their possession.

The plaintiffs are entitled to maintain trover. As we have seen in disposing of the question of evidence, this was not a sale or exchange of properties. The agreement entered into, although essential to the recovery, is not the basis of the suit. The suit is founded on the title obtained from Phelps, perfected by the defendant's waiver of his lien. A return of the ox would not have been by virtue of a sale from defendant, but as a reinstatement of the possession plaintiffs had taken under their mortgage from Phelps. Defendant's wrong was not a failure to deliver property he had sold, but a tortious appropriation of property left in his possession.

*Judgment affirmed.*